THE ATCHISON, TOPEKA & SANTA FÉ RAILROAD COMPANY v. SAMUEL MAHER.

1. MONEY HAD AND RECEIVED; *Evidence.* In ·an action by A. against M. for money had and received, it is admitted on the trial and found by the jury that M. received the money, and is responsible to A. for its repayment; but M. claims that he is responsible only as the agent of A., or as a guarantor, while A. claims that he is responsible as a borrower; and the jury find that the money was received by M. from A. in accordance with the terms of a certain letter from A.'s agent to M., which letter contains among other things the following: "You . . . to draw upon me as you need the funds for this purpose, becoming responsible to me for the *funds lent you* on your drafts;" and there is nothing in the letter showing that M. was to receive the money in any other capacity than as above stated in the letter. *Held,* That, according to the terms of said letter, the money that was transferred thereunder from A. to M., was "lent," and that M. became responsible therefor as a borrower.

2. INCONSISTENCY of *General Verdict and Special Findings.* Where a jury renders a general verdict and makes special findings, and the special findings are inconsistent with each other, and some of them with the general verdict; and where the general verdict and some of the special findings are in favor of the defendant, and one of the special findings is in favor of the plaintiff, and the others would probably be so too, except for a probable misconstruction of a certain written instrument; *held,* that the plaintiff should be granted a new trial, upon his motion.

*Error from Barton District Court.*

ACTION brought by the *Atchison, Topeka & Santa Fé Rld. Co.* against *Maher,* for money had and received. Trial at the March Term, 1878, of the district court, and judgment for the defendant. New trial denied, and the *Railroad Company* brings the case to this court. The facts sufficiently appear in the opinion.

*Ross Burns,* for plaintiff in error.

*Ruggles, Scott & Lynn,* for defendant in error.

The opinion of the court was delivered by

VALENTINE, J.: This was an action brought by the Atchison, Topeka & Santa Fé Railroad Company against Samuel

Maher, for money had and received. The answer of the defendant contained: 1. A general denial; 2. A plea that the defendant received the money, and loaned it to other parties merely as the agent of the plaintiff; 3. A plea that the whole transaction was *ultra vires*, and void. On the trial it was shown that the defendant received the money ($15,203.83) from Edward Wilder, who was the treasurer of and acting for the plaintiff. Before any money passed from Wilder to Maher, however, the following letter was written and sent by Wilder to Maher, to wit:

"TOPEKA, KANSAS, July 8, 1873.

"SAM. MAHER, ESQ., *Great Bend, Kansas—Dear Sir:* I have authority to use $15,000 in cattle advances, upon the conditions and terms spoken of by Mr. Mulvane, Mr. Nettleton and yourself, which I understand to be as follows: You to make loans or discounts according to your own best judgment, and entirely as though for yourself, at 1½ per cent. per month, to the cattle trade, and to draw upon me *as you need* the funds for this purpose, becoming responsible to me for the funds lent you on your drafts, and sharing equally with me in the profits, earnings or discounts; also, as loans are made, to send the papers to me for deposit, subject to your telegraph or mail call for them, except in case of thirty-day loans—say ten days—when you will retain papers. Please say by telegraph if this is satisfactory, and commence operations as soon as necessary to secure the trade, bearing in mind always that the object of the arrangement is to retain as many of the cattle-men at Great Bend as possible; and that to do this your best judgment and tact will be called into play.

"Of course it is better for us all that you *alone* should get the credit of this capital, and the railroad not be known in it.

"Very truly,                    E. WILDER."

In answer to this letter, Maher sent a telegraphic dispatch to Wilder, which reads as follows:

"GREAT BEND, 7/9, '73.

"E. WILDER: You have stated terms as I understand them, and I agree to them.            S. MAHER."

Maher also at the same time sent a letter to Wilder, which he (Maher) testifies was in substance as follows: "You to furnish the money, I to loan it at 1½ per cent. per month; we to divide the interest between us, and I to guarantee the re-

payment of the loans to cattle-men." Maher never received any answer to this letter, and Wilder testified that he had no recollection of ever receiving any such letter. The letter was not introduced in evidence. There was more evidence introduced, but for the purposes of this case we do not think that it is necessary to state it. We might however say, that the evidence showed that the defendant had repaid $506.40 of the amount received by him.

The jury found a general verdict in favor of the defendant and against the plaintiff. They also made the following special findings in answer to the following special questions submitted to them, to wit:

" 1. What was the total amount of money loaned by the plaintiff to the defendant? *Answer:* No loan.

" 2. Was it not the agreement between plaintiff and defendant previous to defendant's receiving any money from plaintiff, and under which all the money was received by defendant, that he was to become responsible to the plaintiff for the money sent him on his draft? *Answer :* Yes, as plaintiff's agent.

" 3. Did not defendant promise to give his notes for the full amount of money received by him by his letter of September 10, 1873 ? *Answer:* Yes.

" 4. Was not the arrangement under which defendant obtained the money from the railroad company contained in letter of E. Wilder to S. Maher of date July 8, 1873, offered in evidence? *Answer:* Yes.

" 5. Did the defendant ever turn over or pay to any officer of the railroad company any notes, bills or money in payment of the sums advanced by the plaintiff? *Answer:* Yes."

The plaintiff moved the court for judgment on the findings and for a new trial, both of which motions the court overruled, and then rendered judgment in favor of the defendant and against the plaintiff for costs.

Under the pleadings and the evidence, it is certain that Maher received from Wilder $15,203,83, of which only $506.40 has been repaid. It is also certain that Maher was to be responsible for the repayment of the whole amount of the money which he received, but whether he was to be re-

sponsible *as a borrower*, as the plaintiff claims, or merely *as a guarantor*, as the defendant claims, is the controverted question. It can scarcely be said the jury found either way by their special findings; and yet indirectly we think they found both ways. By the fourth special finding they found that the money was transferred from Wilder to Maher, in accordance with the terms of said letter of Wilder of July 8, 1873, and by these terms we think the transaction was a loan. But the jury also found by their second special finding that the defendant was to be responsible to the plaintiff only as its agent, and by their first special finding that the transaction was not a loan. The jury evidently made their first and second special findings upon a misconstruction of said letter of Wilder, but can there be any doubt as to what the true construction of that letter should be? Said letter says nothing about the defendant being responsible as a guarantor or as an agent. Indeed, how could he be responsible as a mere agent? But it does say something as to his being responsible as a borrower or as a person to whom *money is lent*. Wilder says in the letter to Maher: "You . . . to draw upon me as you need the funds for this purpose, becoming responsible to me for the *funds lent you* on your drafts." This shows that the defendant was to be responsible for "funds lent," and not as agent or guarantor.

We think that the fourth finding of the jury was sustained by ample evidence, and that under it the plaintiff should recover for all the money which the defendant received and has failed to pay back. But as to how much he received or failed to pay back, the jury did not make any finding. We think the court below should have granted the plaintiff a new trial on its motion.

The judgment of the court below will be reversed, and cause remanded for a new trial.

All the Justices concurring.