No. 32,050

CHESTER SWOPE, *Appellee*, v. THE CITY OF WICHITA, *Appellant*.

(41 P. 2d 987)

Opinion filed March 9, 1935.

*Vincent F. Hiebsch* and *K. W. Pringle*, both of Wichita, for the appellant.

*Austin M. Cowan, Burt Comer* and *Dean L. Lachemyer*, all of Wichita, for the appellee.

The opinion of the court was delivered by

HUTCHISON, J.: This was an action to recover from the city of Wichita damages suffered by the plaintiff when struck on the shoulder by a branch of a tree standing in the parking in front of his home where he had lived two years. The accident occurred during a windstorm, when the tree was blown down and fell as plaintiff was getting out of an automobile in front of his home.

The petition alleged that the tree in question had for several months prior to the injury been dead, rotted and decayed, and the roots thereof were weak and of insufficient strength to support it in an upright position and withstand the pressure of the ordinary winds which prevailed in that locality; that this dangerous and unsafe condition was known by the defendant, its officers, agents, servants and employees, or ought to have been known and could have been known by the exercise of reasonable or ordinary care, but that the city negligently permitted the tree to remain; that defendant had been notified of its unsafe and dangerous condition, and that in a few days after being notified of its condition the officers of the city inspected and examined the tree and condemned the same as being insecure, unsafe, dangerous and a hazard to the safety of the public.

The answer of the defendant city consisted of general and special denials; that the city was not liable generally, that the windstorm was unusually violent and severe, and that plaintiff was guilty of contributory negligence. The reply was a general and special denial.

The jury rendered a verdict for the plaintiff and answered several special questions. The defendant moved to strike out the answers to two of the questions, which motion was overruled. Defendant then moved for judgment on the answers to the special questions notwithstanding the general verdict, which motion was overruled, as was a motion for a new trial. Defendant appeals, assigning several errors, among them the failure and refusal of the trial court to render judgment for the defendant on the answers to the special questions.

It is not seriously contended in this case that the maintenance of trees in the streets is a governmental function for which there can be no liability for negligence in connection with the care and attention necessary to keep them in a fair and reasonable condition for the safety of the public. But the city is not an insurer of the safety of its streets from falling trees or branches and is only liable where it has been negligent in some respect. This was apparently uppermost in the minds of the court and counsel in the trial of this case, for all the special questions asked of the jury were on questions of negligence and contributory negligence, and they have most to do with the result of the action. A recent decision in the same kind of a case, and from the same locality, is particularly pertinent here as defining the liability, duties and obligations of a city with reference to the care of trees on the street. The first syllabus of this case, *Turner v. City of Wichita,* 139 Kan. 775, 33 P. 2d 335, is as follows:

"A city is liable in damages to a person injured by a falling branch or limb of a tree only when the city has notice of the defective condition of the tree, and the branch or limb falls on account of its decayed or rotted condition or is thrown down as the result of usual and ordinary winds; but in case a high and more or less unusual wind is blowing, and it need not be a tornado nor even of unprecedented velocity, and it is obvious to a person of ordinary intelligence traveling upon the street that limbs and branches, either decayed, rotted or living, from trees standing in the highway may be thrown down, there is no liability, unless the condition of the tree or the limbs or branches thereof is so patently bad and has existed for such length of time that permitting them to remain is equivalent to an utter disregard of the safety of the traveler in the street."

Many of the earlier decisions in this and other courts are cited and discussed in the opinion, and negligence and contributory negligence are almost the sole determining features of such cases.

Nine special questions were asked and answered in this case. The first two questions and answers have to do with the condition of

the street as to its being unsafe. The next three are directly upon the question of negligence and contributory negligence, the third and fifth applying as much to the defendant as to the plaintiff. These five are as follows:

"1. Do you find from the evidence that any portion of the fourth block on South Walnut street was not, on the 29th day of June, 1933, reasonably safe for pedestrians or vehicles? A. Yes.

"2. If you answer question No. 1 in the affirmative, was it rendered unsafe for them by reason of the condition of the tree complained of? A. Yes.

"3. If you answer question number 2 in the affirmative, was the unsafe condition of the tree such, first: that an ordinarily prudent person could have observed it? A. No.

"Second: That an ordinarily prudent person would have regarded it as unsafe? A. No.

"4. Did the plaintiff regard the tree as unsafe during the wind which was blowing immediately before he got out of the car in which he was riding? A. No.

"5. If you answer question number 4 in the negative, state whether or not any ordinary, reasonably prudent person would have regarded the tree as unsafe at the same time. A. No."

In connection with these, there must be considered on the question of contributory negligence the second part of the answer to question No. 8, which finds the plaintiff not guilty of any negligence, which is in harmony with the answers to the third, fourth and fifth questions, and disposes completely of the question of contributory negligence. If these five questions and answers were all there were on the matter of negligence, they would also completely exonerate the defendant from negligence, because they find that an ordinarily prudent person could not have observed the unsafe condition of the tree but would have regarded it as safe, and the city and its officers and agents are governed by the same rules and requirements as others, and unless there is something definite to bring its condition to the attention of the city it would not be negligent. The answer to the sixth question is not really an answer. It asks for facts, and the answer is practically a quotation of a part of one of the instructions given by the trial court as a pure matter of law. It is as follows:

"6. What facts, if any, regarding the condition of the tree did the officers or agents of the defendant know, which were unknown to the plaintiff? A. City should have known all the facts, as they made an examination of said tree."

The three remaining special questions and answers are as follows:

"7. Was the plaintiff's injury due to an unavoidable accident? A. No.

"8. If you find for the plaintiff, state:

"First: The acts of negligence of which the defendant was guilty. A. Neglect to remove tree after notice of its dangerous condition and their examination thereof.

"Second: The acts of negligence, if any, of which the plaintiff was guilty. A. None.

"9. Do you find that the city was notified of the condition of the tree on or about the 14th day of June, 1933? A. Yes."

The answer of the jury to the seventh question disposes of the defense that the windstorm was so unusual and severe as to relieve the defendant on that account. The answer to the ninth question shows that the city was notified of the condition of the tree on June 14, 1933. The date of the injury as shown by the answer to the first question was June 29, 1933. The answers to two of the questions show that the city made an examination of the tree without naming any date of such, but presumably between these two dates. So there would be no negligence in the failure of the city to make an examination of the tree within a reasonable time and before the accident.

The negligence found by the jury was the neglect to remove the tree after notice and examination thereof. But what was the result of that examination? What did that examination reveal which an ordinarily or reasonably prudent person could not observe or detect as to its being unsafe? That was evidently the very purpose of question six, which the jury in effect failed to answer, except to quote a law phrase and say defendant had made an examination of the tree, which is repeated in the answer to question eight. Suppose a reasonably careful examination had revealed the same apparent condition of the tree as the casual observance of it by reasonably prudent persons, including the plaintiff, who had lived beside it for two years. Suppose such reasonably careful examination might have revealed it was in a reasonably safe condition to stand for a while, although later such conclusion might be shown to be incorrect. A careful examination does not always reveal the actual condition. The court and counsel wanted to know the facts revealed by such examination. Reading all the answers together, they show the tree would not have been regarded as unsafe by the plaintiff or any other ordinarily prudent person without an examination, and then

we are left entirely uninformed as to what it would show on examination. The rule is uniform that we are limited to the feature of negligence found by the jury, regardless of the many other features of negligence pleaded. Here we are limited to the neglect to remove the tree after notice and examination. Counsel knew something else was necessary as to why it should be removed and asked for facts, and the answer gave no facts.

These answers are not inconsistent with each other, but are inconsistent with the general verdict, because no reason was given for removing the tree or any facts that would make it subject to removal, except those shown after the accident to have existed before the accident. The general information known to plaintiff and defendant alike after the tree had blown down will not supply this omission as to facts of negligence before the accident, when the other answers are so strong to the effect that the unsafe condition could not be observed by an ordinarily prudent person. The closing lines of the syllabus, quoted above from the Turner case, *supra*, are particularly applicable here:

". . . there is no liability, unless the condition of the tree or the limbs or branches thereof is so patently bad and has existed for such length of time that permitting them to remain is equivalent to an utter disregard of the safety of the traveler in the street."

In the case of *Carlgren v. Saindon*, 129 Kan. 475, 283 Pac. 620, it was held:

"When answers to special questions are consistent with each other, but in conflict with the general verdict, the answers to special questions should stand and the general verdict be set aside." (Syl. ¶ 2.)

It was held in the case of *Behler v. Wichita Transportation Co.*, 136 Kan. 591, 16 P. 2d 503, that—

"Where the special findings of the jury acquit the defendant of the negligence charged in the petition, a general verdict for the plaintiff cannot be reconciled with such findings and the defendant is entitled to a judgment." (Syl. See, also, *Tacha v. Railway Co.*, 97 Kan. 571, 155 Pac. 922; *Hurt v. Stout*, 105 Kan. 54, 181 Pac. 623; and *Musgrave v. Equitable Life Assurance Society*, 124 Kan. 804, 262 Pac. 571.)

We conclude that the answers given by the jury are insufficient in themselves to make the defendant city liable; they are consistent with themselves as far as they go, and all taken together are inconsistent with the general verdict, and therefore the general verdict

cannot stand, but judgment should be rendered for the defendant on the answers to the special questions notwithstanding the general verdict.

The judgment is reversed and the cause is remanded with instructions to render judgment for defendant on the answers to the special questions.