No. 36,264

LEON W. CRAMER et al., *Appellants*, v. ELIZABETH SMITH BROWNE, C. A. McCULLOUGH, as Administrator c. t. a. of the Estate of GEORGE R. BARRETT, Deceased, and C. A. McCULLOUGH, as Executor of the Estate of RINKER R. BARRETT, Deceased, *Appellees*.

(155 P. 2d 468)

424

Opinion filed January 27, 1945.

*Douglas Hudson,* of Fort Scott, and *Bernard L. Sheridan,* of Paola, argued the cause, and *Howard Hudson,* and *Douglas G. Hudson,* both of Fort Scott, were on the briefs for the appellants.

*Walter McVey,* of Independence, and *J. L. Stryker,* of Fredonia, argued the cause, and *W. G. Fink,* of Fredonia, and *O. L. O'Brien,* of Independence, were on the briefs for the appellees.

The opinion of the court was delivered by

PARKER, J.: This controversy requires the construing of the terms of a joint will, the sole question at issue being whether by the use of language to be found therein it was intended specific bequests to a legatee vested on the death of the surviving testator or the time of their vesting was suspended until such time as the court admitting the will to probate made its order of final settlement, accounting and distribution.

George R. Barrett and Kate C. Barrett, husband and wife, executed a joint will on July 23, 1932. The wife died in 1933. Her will was probated and her estate closed without litigation.

Mr. Barrett died on January 26, 1943. Thereupon, the joint will was admitted to probate as his last will and testament. Thereafter C. A. McCullough was appointed as administrator c. t. a.

Material portions of the will read as follows:

"I, George R. Barrett, and I, Kate C. Barrett, and each of us and both of us, being of sound and disposing mind and memory and not under any restraint, and realizing the uncertainty of life and the certainty of death, and wishing to direct how our property shall be distributed on our death, do hereby make, publish and declare this to be our last will and testament and hereby revoke any and all former wills by us made.

"First: It is the will and desire of each of us and of both of us, that our just debts and funeral expenses be paid.

"Second: It is the will and desire of each of us, and the mutual will and desire of both of us, that on the death of either of us, all the property of the deceased party, whether real, personal or mixed, shall descend to, and become the sole and separate property of the surviving party, for his or her use and benefit for and during his or her lifetime, and that said survivor shall have full power and right to convey and transfer said property.

"Third: It is the will and desire of each of us and the mutual will and desire of both of us, that on the death of which ever one of us that survives the other, that all of our property of whatsoever kind or nature, after the payment of debts and funeral expenses, shall be distributed as follows, to-wit:

"1. One Thousand ($1,000.00) Dollars shall be first paid to the board of trustees of the First Presbyterian Church of Neodesha, Kansas, to be used by said board for any need of said church other than current expenses.

"2. Ten Thousand ($10,000.00) Dollars shall next be paid to Rinker R. Barrett, son of George R. Barrett, if living; if deceased, to his children, if any.

"3. After the foregoing bequests are paid, it is the will and desire of each of us and the mutual will and desire of both of us, that the remainder of our said property shall be divided into nine (9) equal parts and distributed to the following named persons, to-wit:

"A. One part to Rinker R. Barrett, son of George R. Barrett;

"B. One part to Leon W. Cramer, son of William H. Cramer.

"C. One part to Fred Cramer, son of William H. Cramer;

"D. One part to Henry Cramer, son of Charles A. Cramer;

"E. One part to Frank Cramer, son of Charles A. Cramer;

"F. One part to Edith Cramer, daughter of Charles A. Cramer;

"G. One part to Katherine S. Griffith, daughter of Mrs. A. C. Hutchins;

"H. One part to Walter G. McCarter, son of Mrs. A. C. Hutchins;

"I. One part to be divided equally between Kyle C. Smith and Elizabeth Smith-Browne, children of Bessie McCarter-Smith;

"Fourth. It is the will and desire of each of us and the mutual will and desire of both of us, that if, at the time of the distribution of our property under this, our last will and testament, any of the persons named, in subdivisions '2' and '3' of paragraph 'Third' above, shall have died and have no children living, then such portion bequeathed to said persons, so deceased, shall be placed into the common fund and divided equally among the surviving persons named and mentioned above in subdivisions '2' and '3' of paragraph 'Third'; if any of the persons named in subdivisions '2' and '3' of paragraph 'Third' above, shall have died at said time, his or her portion shall be paid to his or her children, if there be any living at said time.

"Fifth: I, George R. Barrett, and I, Kate C. Barrett, and each of us, do hereby devise and bequeath to the other surviving, all the estate of every kind and character and wherever situate, personal, real and mixed of which the one dying first shall be seized or have an estate, claim or interest therein, and to be owned and disposed of by the survivor as he or she may desire, and that upon the death of the survivor, all the estate of the survivor not disposed of by such survivor is hereby devised and bequeathed in the manner, and according to the bequests made in paragraph 'Third' above.

"Sixth: It is the will and desire of each of us and the mutual will and desire of both of us that the survivor of us be executor or executrix of this, our last will and testament, and direct that the court admitting this will to probate, grant letters testamentary to said survivor without bond."

Rinker R. Barrett, one of the legatees mentioned in the will, died testate on November 14, 1943. He was the son of George R. Barrett, but not of Kate C. Barrett, he had never been married and he left no issue or children surviving him. Worthy of note but unimportant for our purposes is the fact that C. A. McCullough was appointed and qualified as executor of the last will of this decedent.

On January 4, 1944, McCullough as administrator c. t. a. filed his petition for final settlement. Within a short space of time the appellants filed their answer and written defense thereto, wherein they challenged the right of the estate of Rinker R. Barrett, to participate in the distribution of the estate of George R. Barrett, on the ground that since the son had died having no children living prior to the time of the distribution of the property left by his father the legacies evidenced by subdivision "2" of paragraph "Third" and subparagraph "a" of subdivision "3" of paragraph "Third" of the latter's will had lapsed and were of no force and effect.

The issue thus raised was presented to the probate court, which denied appellants' contention, and later submitted in district court with the same result. Hence this appeal.

Appellants' first three specifications of error, actually raise the one issue the trial court erred in holding that under the language to be found in the will the bequests to Rinker R. Barrett vested in him at the time of the death of the testator and did not lapse because of the fact such devisee died before the probate court had made its formal order of final settlement and distribution and determination of devisees entitled to the estate under the terms of such instrument.

Before proceeding further we pause to dispose of appellees' motion to dismiss the appeal, based on the premise appellants have no right to appellate review because no motion for new trial was filed or presented in the court below. The point has little merit. The material error assigned in the three specifications of error to which we have referred is the construction given the language found in the will. Such specifications raise a pure question of law and permit immediate appellate review without a motion for new trial. (See *Ritchie v. K. N. & D. Rly. Co.*, 55 Kan. 36, 39 Pac. 718; *Swift v. Clay*, 127 Kan. 148, 150, 272 Pac. 170; *Achenbach v. Baker*, 157 Kan. 292, 139 P. 2d 407; *Lake Superior Lbr. Co. v. Homestead B. &*

*L. Ass'n,* 139 Kan. 565, 32 P. 2d 202.) Besides, the facts were stipulated in the court below and there was no dispute regarding them. Moreover, appellants' claim is that notwithstanding the evidence and conceding all of it to be true the judgment is erroneous. In either situation a motion for new trial is not required (*Nichols v. Trueman,* 80 Kan. 89, 101 Pac. 633; *Filter Co. v. Bottling Co.,* 89 Kan. 645, 132 Pac. 180; *McLeod v. Palmer,* 96 Kan. 159, 150 Pac. 535).

It is true the fourth assignment in part raises a trial error in that it charges the trial judge refused to give proper recognition to the presumption of apt and correct usage of language implied from the drafting of the will by a skilled lawyer and judge. If so regarded it would not preclude consideration of the others. However, we view it as correlative to what preceded it rather than an assignment of error. Anyway, without passing on the question we are not disposed at the moment to sanction any doctrine which recognizes that the construction of a will is to be determined from the skill and ability of the scrivener who drafts it.

Turning now to the principal issue appellants urge that the language to be found in the will, and particularly the phrase "that if at the time of the distribution of our property under this our last will and testament" as it appears in paragraph fifth thereof, requires the interpretation the time of vesting of the legacies to Rinker R. Barrett occurred at the time of distribution rather than at the death of the surviving joint maker of the instrument.

Counsel for both parties are in almost complete accord as to the applicability of certain fundamental rules of construction pertinent to a determination of the force and effect to be given the terms and provisions of wills generally.

One of such principles admitted without question is that announced in *Selzer v. Selzer,* 146 Kan. 273, 69 P. 2d 708, wherein this court held:

"A rule for the interpretation of wills, to which all other rules must yield, is that the intention of the testator must control. In order to ascertain that intention it is the duty of courts to consider the will as a whole and to give to its various provisions such construction, if reasonably possible to do so, as will effectuate rather than defeat the intention of the testator." (Syl. ¶ 1.)

For other decisions to the same effect, see *Whitsitt v. Mulkey,* 154 Kan. 138, 140, 114 P. 2d 836; *Zabel v. Stewart* 153 Kan. 272, 109 P. 2d 177; *Weaver v. Chatterton,* 154 Kan. 696, 698, 121 P. 2d

211; *Dyal v. Brunt*, 155 Kan. 141, 123 P. 2d 307; *In re Estate of Rinker*, 158 Kan. 406, 412, 147 P. 2d 740.

Another, almost but not entirely conceded, is well stated in 69 C. J. 597, 602, § 1681, where it is said:

"In accordance with the rules heretofore stated, a clearly manifested intention as to the time of vesting will prevail over the rules of construction in favor of vesting, but the law favors the early vesting of testamentary gifts. If a contrary intention does not clearly appear an interest will always be construed as vested rather than contingent, and to vest at the earliest possible time consistent with the testator's intention, so that if a contrary intention is not manifest the interest will usually be regarded as vesting immediately upon the testator's death. In other words, as the rule is sometimes expressed, the presumption is, and all doubts are resolved, in favor of vesting; and no estate or interest will be held contingent unless very decided terms are used in the will or it is necessary to so hold in order to carry out the other provisions or implications of the will. The intention to create a contingency must clearly appear for the courts will not construe the testator's words as importing a contingency if a different meaning can fairly be given to them. . . ."

A similar statement of the same principle is to be found in 28 R. C. L. 231, 232, § 192.

So elemental as to require little, if any, citation of authorities is the proposition that the vesting of interests in personalty is subject to the same rules as the vesting of estates in real property (69 C. J. 595, § 1675).

This court has always recognized and applied the fundamental canons of construction just quoted.

Thus, in the early case of *Bunting v. Speek,* 41 Kan. 424, 21 Pac. 288, it was held:

"In a devise to a wife for life, with remainder to the legal heirs of the testator, to create a contingent remainder the intent so to do must be expressed in words so plain that there is no room for construction.

"No remainder will be construed to be contingent which may, consistently with the words used and the intention expressed, be deemed vested." (Syl. ¶¶ 1, 2.)

While in *Purl v. Purl*, 108 Kan. 673, 675, 197 Pac. 185, it was said:

". . . A will speaks from the time of the testator's death. A remainder will be regarded as vested rather than contingent, unless such an interpretation would contravene the testator's expressed intention. . . ."

And, in the opinion, in *Votapka v. Votapka*, 136 Kan. 224, 226, 14 P. 2d 732, it was stated:

"The law of this state favors the vesting of estates, and instruments transferring an interest in real estate, whether will or deed, will be construed as

creating a vested estate, unless a different intent is expressed or clearly implied from the terms of the instrument itself. (R. S. 67-202 and 22-258; *Fielding v. Alkire,* 124 Kan. 592, 261 Pac. 597.)"

Referring to the doctrine appellants, although recognizing its existence, attempt to minimize its importance and question its application here by suggesting it is becoming of less significance in later decisions. We cannot agree. This court still adheres to the rule as announced in our earlier decisions (see *Anderson v. Wise,* 144 Kan. 612, 617, 62 P. 2d 825; *Buxton v. Noble,* 146 Kan. 671, 73 P. 2d 43; *Lewis v. McConchie,* 151 Kan. 778, 783, 100 P. 2d 752 and *Jones v. Petrie,* 156 Kan. 241, 244, 132 P. 2d 396.)

With general principles stated we shall not attempt to refer to our numerous decisions on the question of when a legacy becomes vested or when it remains contingent. They all depend for their result upon the intention of the testator as reflected by the particular terms and provisions of the will under consideration and are not decisive of the one we have before us for review.

Counsel for the parties—although they have clearly stated their contentions and with their customary diligence cited cases which tend to support their respective views—have failed to direct our attention to any decision involving construction of a will which contained language identical or even similar to the one here involved.

Our own investigation of the authorities leads us to an examination of *Johnson v. Coler,* 187 Iowa, 734, 174 N. W. 654, which we deem helpful. There it was held in substance:

"A devise to a named devisee with direction that, in event of devisee's death *before distribution,* her share should go to her 'living heirs,' creates an absolute estate, being in effect a devise to her 'and her heirs', and words 'living heirs' being words of description instead of purchase." (Headnote, ¶ 4.) (Emphasis ours).

Time nor space will permit relation of all reasoning behind the court's decision in the case to which we have just referred and reference to limited portions of the opinion might tend to confuse. It suffices to say that our deliberation convinces us it is sound authority for a conclusion the language relied on by appellants here as evidencing an intent to suspend the vesting of interest is not susceptible of the interpretation they give it.

A careful examination of the George R. Barrett will discloses in its preamble an express desire as to how his property should be distributed *on his death.* The third paragraph contains a direction

that *on the death* of whichever joint maker survived, after the payment of debts and funeral expenses, *all of such decedent's property should be distributed* to certain devisees, specifically naming them. Subdivision "3" of paragraph third provides that *after the foregoing bequests are paid,* including the principal one to Rinker R. Barrett, the remainder of the property shall be divided into nine equal parts.

The fifth paragraph reveals the use of the words "devise and bequeath" by the joint makers to effect a testamentary disposition of the property in a manner which is conceded to have given the survivor an absolute interest in it, vesting immediately upon the death of the other; while the same words, except for a change in their tense, are employed to indicate the interest to be acquired by their legatees on the death of the survivor. In the same paragraph we also note that all of the estate not disposed of by the survivor was devised and bequeathed in the manner and according to the bequest made in paragraph third without reference to or mention of the fifth paragraph.

In the face of all of these terms and provisions and the fundamental rules of construction applicable, after careful examination and consideration of the will as a whole and the authorities cited by counsel, we have no difficulty in concluding the makers of that instrument intended to and did by its terms and provisions vest a present interest in Rinker R. Barrett, in the legacies bequeathed to him, effective on the death of the survivor, notwithstanding the use of the term "at the time of the distribution of our property" as it appears in the fourth paragraph thereof. As to such phrase, when considered in conjunction with all the other terms and provisions of the will, we are convinced the testators regarded it as having reference to a date on which the survivor would have no further use for the property and it could immediately result in benefit to the objects of their bounty rather than to some indeterminable time in the future which might not become fixed until long after the individuals to whom they had made an outright gift would be precluded from enjoying it.

In so concluding we are not unmindful of appellants' contention that the word "distribution" when appearing in wills is a technical one and should be regarded as used in a technical sense in the will in question. Even so, the rule would be inapplicable here. The technical import of a word is never permitted to prevail where the intention of a testator is clear and its use will defeat his obvious

purpose (*Bullock v. Wiltberger*, 92 Kan. 900, 142 Pac. 950, and *Mann v. Haines*, 146 Kan. 988, 996, 73 P. 2d 1066).

The judgment is affirmed.

BURCH, J., not participating.